FIRST HERITAGE LIFE ASSURANCE CO. *v.* STATE OF ARKANSAS, EX REL ALLAN W. HORNE, INSURANCE COMMISSIONER, AND IN RE EXAMINATION REPORT, FIRST HERITAGE LIFE ASSURANCE CO.

5-5528                                              467 S. W. 2d 383

Opinion delivered May 17, 1971
[Rehearing denied June 21, 1971.]

*Allen, Young & Bogard,* for appellant.

*Kemp & Whitmore,* for appellee.

FRANK HOLT, Justice. These two cases were consolidated for trial and on appeal. Appellant, First Heritage Life Assurance Company, initiated the first suit by an appeal to the circuit court from the failure of the appellee, Insurance Commissioner, to enter an order after the Commissioner's hearing concerning appellant's financial instability. A few days later, the second suit was instituted by the appellee directly in the circuit court alleging the delinquency or insolvency of the appellant and praying for a receivership and liquidation of appellant.

In 1969 an examination of appellant's business affairs was authorized by the appellee. According to the

Examination Report, appellant appeared to be insolvent by $353,359.87. In accordance with appellant's request, appellee conducted a hearing to determine the accuracy of this Report. Thereafter, the appellant filed a notice of appeal from the Commissioner's failure to enter an order based upon the hearing which he had conducted. A few days subsequent to the filing of appellant's suit, the appellee Commissioner responded by filing its order based upon the hearing wherein he found appellant to have a capital impairment of $124,954.84 (after deducting $228,405.03 from the examiner's figure); revoked its certificate of authority; and ordered that no further business be conducted. At the same time, the appellee instituted the delinquency proceeding (the second suit) by an original action in the circuit court. At a hearing based on the delinquency proceeding, both parties agreed to the consolidation of the cases and to making the transcript of the Commissioner's hearing the record for both cases in order to avoid duplication of testimony. The court found that the Commissioner's findings were supported by substantial evidence and, therefore, affirmed. The court then entered an order appointing the Commissioner as receiver of appellant for the purpose of liquidation. From this order favorable to the Commissioner in both cases comes this appeal.

Appellant first contends for reversal that the lower court erred in not ruling the order of the Commissioner to be untimely and void. Ark. Stat. Ann. § 66-2126 (Repl. 1966) provides that the Commissioner shall issue his order within thirty days after the formal hearing. The Commissioner did not issue the order within the thirty-day time period and appellant initiated suit in the circuit court under authority granted in § 66-2127. Under this statute appellant is accorded the right to appeal from the Commissioner's failure to enter an order; however, this authority does not preclude the Commissioner from taking further action, it merely provides appellant a remedy when a delay exceeds the statutory time limitation. The statute also grants the circuit court authority to require the Commissioner to deposit with the court a complete transcript of all pro-

ceedings conducted before him in order that the court may review the findings of the Commissioner and affirm such findings if supported by substantial evidence. Appellant could not, by instituting its appeal for a failure of the Commissioner to act, preclude the Commissioner from entering a final order setting out his findings. The Commissioner's order was not void and the lower court did not err in affirming such order.

Appellant does not assail the circuit court's authority to uphold the Commissioner's findings as to the Examination Report if the report is supported by substantial evidence. Appellant, however, asserts that when the separate question of delinquency or insolvency was put in issue by the original action in the circuit court, the delinquency and receivership issue must be determined by a preponderance of the evidence. Appellant contends for reversal that the court applied the lesser quantum of proof, the substantial evidence rule, to the separate delinquency proceeding.

We first review the evidence to determine if there is substantial evidence to support the lower court's affirmance of the Commissioner's Order. Appellee Commissioner agrees that prior to January 1, 1968, appellant was not required by statute to maintain any reserve based on life insurance policies since it issues stipulated premium policies. He determined, however, that appellant had contractually obligated itself to maintain such reserves by issuing policies containing standard non-forfeiture tables and cash values with language stating that the reserves would be calculated according to certain agreed computations. Appellee Commissioner contends that appellant is contractually obligated to maintain life policy reserves in the amount of $101,-826.00 which constitute a liability. The accuracy of this amount is not controverted by appellant if it is required to maintain this item as a reserve. Appellant merely argues that it was not contractually obligated to maintain any reserves on life insurance policies issued prior to January 6, 1968 since it is a stipulated premium company. We do not agree. A copy of the insurance policy was submitted as an exhibit. A reading

of the policy clearly shows that the Commissioner's determination was supported by the policy which contains a table entitled "TABLE OF CASH, LOAN AND NON-FORFEITURE VALUES." It further states:

"* * * and the legal reserves for this policy, shall be computed according to the Commissioner's 1941 Standard Ordinary Table of Mortality with interest at the rate of three and one-half per cent per annum and on the assumption that deaths during any policy year occur at the end of such year, with the exception that the net single premiums used for the calculation of the periods of extended term insurance are based on rates of mortality equal to one hundred and thirty per cent (130%) of the said mortality table. The policy reserves shall be computed in accordance with the Commissioners Reserve Valuation Method."

Also, the policy on its face states it is issued on a "legal reserve basis." As previously indicated, appellant agrees that the figure of $101,826.00, representing life policy reserves, is correct if it was proper to allocate it as a liability. We think there is ample substantial evidence to support the Commissioner's finding that this figure is properly a liability item.

Another significant item is $88,566.78 which was established as a claim reserve and allocated as a liability by the Commissioner. This sum represents expected future payments to policy holders based upon their disability claims. Each of the disability claims had been processed and approved for payment by appellant. In fact, payments had been made periodically by the appellant on these disability claims. This figure was determined by actuaries, one representing appellant and one the Commissioner, based upon disability tables. Their testimony appears uncontradicted. Appellant's witness acknowledged that disability income claims are generally considered reserves by actuaries. We agree that substantial evidence supports classifying this item as a liability. Nor do we find the court erred in holding that substantial evidence supports the Commissioner's

finding that the sum of $12,155.37 is a liability item. This is a reserve for disability claims in controversy or in progress. We are of the same view with reference to $4,188.16 being classified as a liability item. This represents prepaid premiums on several policies.

Appellant also asserts the court erroneously affirmed the Commissioner's exclusion of certain assets claimed by appellant. It is contended that the court should have restored $5,657.25 to the value of appellant's real estate; that $2,493.00 additional should be allowed on the value of appellant's common stock; and that $1,790.34, representing accrued interest on certificates of bank deposits, was improperly disallowed as an asset. Even if appellant be correct and these amounts be restored as assets, we cannot say that the court erred in holding that the appellee Commissioner's finding of capital impairment is not supported by substantial evidence.

Now we turn to appellant's assertion that the court erred in the insolvency or delinquency proceeding (the original action filed in the circuit court) by failing to make that determination by a preponderance of the evidence. It is true that in an action originally initiated in the circuit court, the court's determination of a fact issue must be based upon a preponderance of the evidence. In oral argument appellee Commissioner agreed as to the correctness of this rule. An insolvency proceeding brought by a Commissioner is no exception to the above stated rule. In this instance, however, the parties agreed to consolidate the cases and use the transcript developed at the Commissioner's hearing as the record in both cases. No additional evidence was adduced before the trial court. In the circumstances, it certainly must be said that since the findings of the Commissioner as to capital impairment are based upon substantial evidence, as held by the trial court, the Commissioner's findings, therefore, constitute an unrebutted prima facie case and preponderate in the separate delinquency proceeding. Even if we disregard the Commissioner's findings, in our view the record in the delinquency proceeding is

amply sufficient to sustain the trial court's judgment as a matter of law.

The trial court did not err in holding in the first case there was substantial evidence to support the Commissioner's finding that appellant was insolvent; nor did the court err in holding that the appellant was subject to receivership in the second or the original action instituted by appellee in the circuit court.

Affirmed.